IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **A.C. and D.C., parents and natural guardians, and on behalf of minor plaintiff, C.C.**<br><br>**Plaintiff,**<br>v.<br><br>**OWEN J. ROBERTS SCHOOL DISTRICT**<br><br>**Defendants.** | **CIVIL ACTION NO. 20-196** |

**MEMORANDUM OPINION**

**Rufe, J.**                                                                                               **March 29, 2021**

This case arises under the Individuals with Disabilities Education Act ("IDEA")[1] and Section 504 of the Rehabilitation Act of 1973.[2] C.C., a student with disabilities ("Student"), attended public school in the Owen J. Roberts School District ("District") and received special education services. His parents, A.C. and D.C. ("Parents"), allege that the District failed to appropriately evaluate Student and failed to fund a requested Independent Educational Evaluation ("IEE"). The parties have filed cross-motions for disposition on the administrative record. The narrow issue before the Court is whether to order the District to fund an IEE.[3] For the reasons explained below, the requested relief is moot, and in the alternative that the decision of the Hearing Officer's decision was proper.

---

[1] 20 U.S.C. §§ 1400, *et seq.*

[2] 29 U.S.C. § 794. Parents do not seek any separate relief under § 504 or allege any facts specific to the Rehabilitation Act, and therefore the Court will not discuss this claim separately.

[3] Parents have filed a separate action relating to a later administrative decision on other claims. *See* Civil Action No. 20-2046. The parties recently filed cross-motions for judgment on the administrative record in that case.

## I. BACKGROUND

Student is a gifted child with medical conditions. In the spring of 2016, expressing concern about Student's "handwriting, written expression [and] executing functioning," Parents consented to a multidisciplinary evaluation of Student. The District found that Student was not eligible for IDEA services, and instead created a Section 504 agreement for Occupational Therapy ("OT") services.[4]

In April 2017, Parents requested another evaluation regarding a suspected "other health impairment" ("OHI").[5] On May 30, 2017, the District in response proposed to conduct a full reevaluation of Student. Parents agreed to a reevaluation, provided that the District did not conduct cognitive or achievement testing, as the Children's Hospital of Philadelphia ("CHOP") recommended against such testing in light of the fact that Student had sustained three concussions during the spring of 2017.[6]

On August 3, 2017, the District completed its Evaluation Report ("ER").[7] The ER included the observations of the school psychologist, Vicki Maumus; achievement scores from various tests; reports from the OT provider; behavior ratings from Parents and teachers; clinical notes and communications from CHOP; and a summary of Student's academic performance on District-wide assessments and classroom grades.[8] The ER concluded that Student met the IDEA criteria for autism, and that Student's medical impairments (previously diagnosed urinary and bleeding disorders) met the eligibility criteria for OHI.[9]

---

[4] Special Educ. Hr'g Officer Final Decision and Order at 4–6..
[5] *Id.* at 7.
[6] *Id.* at 10.
[7] A.R. at 711.
[8] A.R. at 711–61.
[9] Special Educ. Hr'g Officer Final Decision and Order at 13.

Parents disagreed with the findings of the ER, contending that although Student had received a clinical diagnosis of autism, the ER incorrectly determined that the IDEA standard was met. Parents contended that Student should have been diagnosed with a traumatic brain injury ("TBI"), which was not considered in the ER and which had not been medically diagnosed. Parents also disagreed with the "OT assessment, the autism conclusion, the pragmatic language disorder discussions, and . . . the inclusion of the 'F-Scale' data and parental input."[10] However, it was not until the spring of 2019 that Parents requested an Independent Educational Evaluation ("IEE").[11] The District denied this request, and filed a Due Process Complaint to defend the ER. After four administrative hearings, the Hearing Officer issued his final decision in favor of the District on October 14, 2019.[12] Parents then filed this action.

Parents argue that the Hearing Officer erred by (1) finding that Parents improperly conditioned the evaluation; (2) giving little weight to the opinion of Parents' expert; (3) determining that the District was not put on notice for a possible TBI diagnosis and (4) determining that the District's identification of Student with autism was supported by the record.[13] The District argues the Hearing Officer's decision is adequately supported by the record, and that the Parents' request for an IEE is not ripe or is moot.

## II.   EVALUATIONS UNDER THE IDEA

The IDEA requires school districts that receive federal education funding to provide every child with disabilities with a "free appropriate public education," commonly referred to as

---

[10] *Id.*

[11] The parties dispute the date of this request. *Compare* Pl.'s Mot. [Doc. No. 10] at 4 ("On February 14, 2019, Parents requested and independent evaluation.") *with* Def.'s Mot. [Doc. No. 11] at 5 ("[O]n April 26, 2019, parents, through counsel, requested an IEE at public expense . . . .").

[12] Special Educ. Hr'g Officer Final Decision and Order at 1.

[13] Pl.'s Mot. [Doc. No. 10] at 15.

a FAPE.[14] To facilitate the provision of a FAPE, the IDEA requires school districts to conduct evaluations of each child with a disability at least every three years.[15] In conducting an evaluation, "the public agency must ... [u]se a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information about the child ... that may assist in determining ... [t]he content of the child's [individualized education plan ("IEP")]."[16] "Assessments and other evaluation materials include those tailored to assess specific areas of educational need."[17] The assessment must include "all areas related to the suspected disability, including, if appropriate, ... social and emotional status."[18] The evaluation must be "sufficiently comprehensive to identify all of the child's special education and related service needs[.]"[19] Evaluations "are used to determine appropriate educational programs."[20]

If the parents disagree with a district's evaluation, they may request an IEE at public expense.[21] However, the School District has the opportunity to file for an administrative due process hearing to defend the evaluation.[22] If either party is aggrieved by the findings and

---

[14] 20 U.S.C. § 1412(a)(1). A FAPE is "an educational instruction 'specially designed . . . to meet the unique needs of a child with a disability,' coupled with any 'related services' that are 'required to assist a child with a disability to benefit from [that instruction].'"*Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 524 (2007) (citing 20 U.S.C. §§ 1401(26)(A), (29)). If "parents believe that the school district is not providing a FAPE for their child, they may unilaterally remove [the student] from the school, enroll [the student] in a different school, and seek tuition reimbursement for the cost of the alternative placement." *Munir v. Pottsville Area Sch. Dist.*, 723 F.3d 423, 426 (3d Cir. 2013).

[15] 34 C.F.R. § 300.303.

[16] 34 C.F.R. § 300.304(b)(1)(ii).

[17] *Id.* at § 300.304(c)(2).

[18] *Id.* at § 300.304(c)(4).

[19] *Id.* at § 300.304(c)(6).

[20] *Colonial Sch. Dist. v. N.S.*, No. 19-1311, 2020 WL 1517562, at *12 (E.D. Pa. Mar. 30, 2020) (brackets and internal quotation marks omitted) (quoting 34 C.F.R. § 300.304(b)(2)).

[21] 34 C.F.R. § 300.502(b)(1). *See also M.S. v. Hillsborough Twp. Pub. Sch. Dist.*, 793 F. Appx. 91, 93 (3d Cir. 2019) ("[A] publicly funded IEE follows a disputed evaluation by a public agency.").

[22] *Gwendoynne, S. v. West Chester Area Sch. Dist.*, No. 19-3844, 2-21 WL 949483 at * 14 (E.D. Pa. Mar. 12, 2021).

decision reached after such a hearing, the IDEA allows that party to file a civil suit in state or federal court.[23] The parents may only request an IEE in connection with an existing evaluation; if the evaluation is more than three years old it is no longer in effect.[24] Additionally, "if a parent refuses to consent to a proposed public evaluation in the first place, then an IEE at public expense would not be available since there would be no public evaluation with which the parent can disagree."[25]

### III.  IDEA STANDARD OF REVIEW

In IDEA actions, the court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."[26]

In evaluating such claims, the court applies a "modified *de novo*" standard of review,[27] and "[a] district court must make its own findings by a preponderance of the evidence."[28] But the court must give "due weight" and "deference" to the findings in the administrative proceedings.[29] Factual findings of the hearing officer, such as whether a school district fulfilled its FAPE obligations, are considered *prima facie* correct, and if the reviewing court does not adhere to them, it must explain why.[30] In addition, credibility determinations based on live

---

[23] *See* 20 U.S.C. § 1415(i)(2)(A).

[24] *See* 20 U.S.C. § 1414(a)(2)(B)(ii).

[25] Assistance to States for the Education of Children With Disabilities, 64 Fed. Reg. 12608 (Mar. 12, 1999).

[26] 20 U.S.C. § 1415(i)(2)(C).

[27] *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003).

[28] *Shore Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004) (citing 20 U.S.C. § 1415(1)(2)(B)(iii)).

[29] *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010).

[30] *Id.* (quoting *S.H.*, 336 F.3d at 270); *see also D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 243 (3d Cir. 2012) (noting that such factual findings are subject to clear error review).

testimony are given "special weight," and the court must accept them "unless the non-testimonial, extrinsic evidence in the record would justify a contrary conclusion . . . ."[31]

The hearing officer's legal conclusions are reviewed *de novo*.[32] "The party challenging the administrative decision bears the burden of persuasion before the district court as to each claim challenged."[33] In reviewing the Hearing Officer's determination, the Court must consider the evidence within the administrative record, including the Hearing Officer's decision, the hearing transcripts, and various administrative exhibits introduced by both parties.

### IV. DISCUSSION

#### A. Parents' Request is Moot

The ER was completed on August 3, 2017, and Parents objected to it and sought an IEE more than 18 months later, in the Spring of 2019. The request for an IEE was made within the three-year period that the evaluation was in effect and during the two-year statute of limitations to request a due-process hearing.[34] However, the District argues that after the 2017 ER, it offered three times to conduct a reevaluation and that Parents refused to consent. The District argues that this refusal precludes the Parents' IEE request now and further argues that because the 2017 ER is now no longer in effect, the case is moot.

The Court of Appeals for the Eleventh Circuit has held that "[t]he parental right to an IEE is not an end in itself; rather, it serves the purpose of furnishing parents with the independent expertise and information they need to confirm or disagree with an extant, school-district-

---

[31] *Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 529 (3d Cir. 1995); *see also Shore*, 381 F.3d at 199 ("In this context[,] the word 'justify' demands essentially the same standard of review given to a trial court's findings of fact by a federal appellate court.").

[32] *S.H.*, 336 F.3d at 270.

[33] *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 270 (3d Cir. 2012).

[34] *See* 20 U.S.C. § 1415(b)(6)(B). *See also* Pl.'s Mot. [Ex. A, Doc. No. 10] at 1–2 (explaining that the Due Process hearing initiated on March 8, 2019 was in regard to August 3, 2017 ER).

conducted evaluation."[35] Thus, if the evaluation is no longer in effect, "the relief the Parents seek—an order directing the District to pay for an IEE—will no longer redress the procedural injury they allege. Were we now to direct the District Court to order the District to pay for an IEE, it would not empower the Parents to participate in the IEP process."[36] In this case, by the time the administrative proceedings concluded, this suit was filed, and the parties completed briefing, more than three years had elapsed. The 2017 ER is inoperative and Parents' request for an IEE moot.[37] However, because the Third Circuit does not appear to have ruled on this issue of mootness, the Court will address the merits of the claim so that the record is complete.

### B. Parents Did Not Improperly Condition the Evaluation

Parents argue that the Hearing Officer erred by finding that they improperly conditioned the evaluation.[38] Both parties agree that when Parents consented to the 2017 evaluation, Student's mother wrote on the form: "CHOP doctors stated that cognitive achievement assessments at this time would not be valid due to multiple concussions."[39] The Hearing Officer determined that "the failure to consent to a comprehensive evaluation is unnecessarily delaying the IDEA FAPE process," and noted that a "parent's imposition of restrictions on a district

---

[35] *T.P. v. Bryan Cnty. Sch. Dist.*, 792 F.3d 1284, 1293 (11th Cir. 2015).

[36] *Id.*

[37] *Cf. M.S. v. Hillsborough Twp. Pub. Sch. Dist.*, 793 F. App'x. 91, 92 (3d Cir. 2019) (holding that the school district was not obligated to pay for an IEE because the parents did not object to the publicly funded evaluation during the three years it was in effect). In its Counterclaim, the District contended that Parents' request for an IEE was also moot because Student had moved outside District boundaries. Counterclaim [Doc. No. 3] at 26. This argument has not been pursued, other than in a footnote. Def.'s Mot. [Doc. No. 11] at 8 n.13. Although the law on this issue is not well developed, the Court of Appeals has generally held that "to comply with the IDEA, a school district no longer responsible for educating a child must still be held responsible for its past transgressions." *D.F. v. Collingswood Borough Bd. of Educ.*, 694 F.3d 488, 497 (3d Cir. 2012). The Court does not hold that the claim is moot on this basis.

[38] Pl.'s Mot. [Ex. A, Doc. No. 10] at 16.

[39] Def.'s Resp. in Opp'n [Doc. No. 14] at 11.

evaluation may be viewed as a denial of consent."[40] Parents contend that this determination is incorrect.[41] The District disagrees, arguing that the Hearing Officer "rightly construed [this note] as a conditioning of the evaluation."[42]

If the Hearing Officer found that Parents had denied consent for the August 3, 2017 ER, then Parents would not be entitled to an IEE. As the Hearing Officer's decision notes, extensive demands and conditions placed on an evaluation or revaluation may constitute a denial of consent.[43] However, to constitute a denial of consent, the conditions must effectively prevent the school district from completing the evaluation.[44] Here, the 2017 ER was completed, taking into account Parents' condition as to testing, which was based on the recommendation of Student's medical team. While Parents' note did condition the evaluation, it did not do so in a manner so extreme as to render the consent ineffective. Despite arguing that Parents improperly conditioned the evaluation, the District otherwise stands by the ER, and the Hearing Officer fully addressed the adequacy of the ER, to which the Court now turns.[45]

### C. The Hearing Officer Operated within his Discretion in Assigning Less Weight to Parents' Expert

When a hearing officer has "heard live testimony and determined that one witness is more credible than another witness, [the hearing officer's] determination is due special weight."[46] A district court must accept these credibility determinations unless the aggrieved

---

[40] Special Educ. Hr'g Officer Final Decision and Order at 30 n.18 (citing *G.J. v. Muscogee Cnty. Sch. Dist*, 668 F.3d 1258 (11th Cir. 2012)).

[41] Pl.'s Mot. [Ex. A, Doc. No. 10] at 17.

[42] Def.'s Resp. in Opp'n [Doc. No. 14] at 12.

[43] *G.J.*, 668 F.3d at 1264–65.

[44] *Id.* at 1262.

[45] Special Educ. Hr'g Officer Final Decision and Order at 25.

[46] *Bayonne*, 602 F.3d at 564 (internal citation omitted). An expert's opinion is not extrinsic evidence in the record. *Id.*

8

party can point to "non-testimonial extrinsic evidence in the record [that] would justify a contrary conclusion."[47]

Parents contend that the Hearing Officer erred by effectively disregarding the testimony of their expert, the school psychologist Ms. Lorraine.[48] The Hearing Officer determined that:

> While the expert's credentials and experience in public schools is substantial, her failure to observe[] the Student in school, test the Student, discuss the Student with the Parents, discuss the Student with the District or the Student's third-[party] medical staff or review all of the then existing school records, data, emails and documents otherwise available and known to the evaluation team, at the time they made the decisions at issue here, makes her opinions/testimony less persuasive, cogent and weighty when compared and contrasted with the District's staff testimony about the Student.[49]

The Third Circuit has held, in a analogous case, that the fact that an expert "had neither met nor observed Student[]" was a legitimate ground for finding the testimony unpersuasive.[50] Parents argue that the "lack of context and nuance" in that decision "effectively forecloses parental expert testimony."[51] But the Hearing Officer had a "permissible basis for discounting [the expert's] testimony" by concluding that the witnesses for the school district had "superior knowledge of [the student's] behavior."[52] Ms. Lorraine did not meet Student or review any documents not included in the ER. Instead, she identified ways in which she concluded the ER was insufficient. For example, she testified that the ER should have included relevant evidence and background information, such that it was unnecessary to review other documents, rather than

---

[47] *Id.*

[48] Pl.'s Mot. [Ex. A, Doc. No. 10] at 7.

[49] *Id.* at 7–8 (citing Special Educ. Hr'g Officer Final Decision and Order at 17).

[50] *A.H. v. Colonial Sch. Dist.*, 779 F. App'x 90, 95 (3d Cir. 2019).

[51] Special Educ. Hr'g Officer Final Decision and Order at 11.

[52] *A.H.*, 779 F. App'x. at 95.

assume that a reader would have that information.[53] Ms. Lorraine did not testify as to whether or not the clinical or the educational diagnosis of autism was correct, but explained what she identified as deficiencies in the ER's discussion of the issue.[54] The Hearing Officer did not err in assigning more weight to the testimony of those with knowledge of Student.

### D. The District did not Err by Failing to Evaluate Student for a Traumatic Brain Injury and by Identifying Student with Autism

The ER identified Student as a person with autism for purposes of the IDEA and the Hearing Officer concluded that the District's decision was made as part of a comprehensive assessment. Parents disagree with this conclusion and argue that the Hearing Officer should have determined instead that the District violated its responsibilities by failing to evaluate Student for a TBI after he had suffered several concussions. The District did not address the possibility of a TBI diagnosis in the ER, and the Hearing Officer concluded that the District "did not know, and need not have known, that the Student was otherwise suspected of having a TBI or in need [of] specially-designed instruction."[55]

#### 1. TBI was not an area of suspected disability

Under the IDEA, schools have a responsibility known as "Child Find" to "identify and evaluate all students who are reasonably suspected of having a disability . . . ."[56] Schools must assess students in "all areas of suspected disability."[57] If a school knows or reasonably should know that the student might have a particular disability, it has an obligation to evaluate the

---

[53] A.R. at 255.

[54] A.R. at 241–42, 249 (testifying that "in my opinion given the information that's here, the diagnosis could be accurate.").

[55] Special Educ. Hr'g Officer Final Decision and Order at 30.

[56] *D.K.*, 696 F.3d at 249 (quoting *P.P. v. West Chester Area Sch. Dist.*, 585 F.3d 727, 738 (3d Cir. 2009)). *See also* 20 U.S.C. § 1412(a)(3); 34 C.F.R. § 300.111.

[57] 20 U.S.C. § 1414(b)(3)(B).

student for that disability.[58] An evaluation should be tailored to the specific areas in which a student is struggling, and "need not be designed to identify and diagnose every possible disability."[59] The child find requirement is violated where "school officials overlooked clear signs of disability and were negligent in failing to order testing . . ."[60] Here, Parents contend that the District knew or reasonably should have known that Student might have a TBI, and shirked its responsibility to evaluate him for that disability.[61]

Under the IDEA, a TBI is defined as "an acquired injury to the brain caused by an external physical force, resulting in total or partial functional disability or psychosocial impairment, or both, that adversely affects a child's educational performance."[62] A TBI may affect the ability to take tests and exams, follow complex directions, or learn new skills.[63]

The Hearing Officer found that the letters from CHOP showed that while Student was being treated for the concussion, CHOP "did not diagnose the Student with a TBI or identify any of the common characteristics of a person with an IDEA TBI disability."[64] To disturb these conclusions, Parents must either produce new evidence or point to contrary evidence in the record.[65] Parents contend that CHOP "does not speak in term of the IDEA and need not use the

---

[58] *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 253 (3d Cir. 1999).

[59] *D.K.,* 696 F.3d at 250.

[60] *Bd. of Educ. of Fayette Cnty. v. L.M.*, 478 F.3d 307, 313 (6th Cir. 2007) (internal citation omitted).

[61] Compl. [Doc. No. 1] ¶ 2.

[62] 34 C.F.R. § 300.8(c)(12).

[63] *Id.*

[64] Special Educ. Hr'g Officer Final Decision and Order at 28.

[65] *S.H.* , 336 F.3d at 270 ("A federal district court reviewing the administrative fact finder . . . [is] required to defer to the ALJ's factual findings unless it can point to contrary non-testimonial extrinsic evidence on the record."). No new evidence was submitted in this action.

term TBI,"[66] and that the Hearing Officer misinterpreted or failed to consider the information from CHOP. The Court disagrees.

The records referenced by the Hearing Officer show that CHOP noted on March 2, 2017, that Student had suffered a concussion, was under medical care, and identified certain accommodations and limitations while he recovered.[67] On March 17, CHOP reported that Student had a normal cognitive exam, a normal physical exam, and experienced no symptoms.[68]

An evaluation at CHOP on May 19, 2017, reported Student had "two recent concussions" and presented "with disruptive and oppositional behavior."[69] The evaluation further stated that "[p]er report and chart review, [Student] has a history of worsening behavior over the past few months made acutely worse following two separate concussions which occurred 3 weeks ago."[70] The evaluation also stated that Student had a negative CT head scan on May 5, 2017.[71] The evaluation further stated that Student's mother had reported that he had sensory seeking behavior, and that his "current principal who has known him for years also has concerns about autism spectrum disorder."[72] The evaluation included an impression of "Autism Spectrum Disorder, mild, high functioning" based on "parental report, parent rating scales, and encounter diagnosis."[73]

---

[66] Pl.'s Mot. [Ex. A, Doc. No. 10] at 12.

[67] A.R. at 897–98.

[68] A.R. at 908.

[69] A.R. at 726. This report was summarized in the ER.

[70] A.R. at 726.

[71] A.R. at 726.

[72] A.R. at *726*.

[73] A.R. at 728.

On May 20, 2017, CHOP wrote that Student had been diagnosed with a concussion in early May, and that "[d]uring his recent hospitalization he was diagnosed with Autism Spectrum Disorder and he did not demonstrate headaches, dizziness, or other symptoms concerning for a severe concussion."[74] By a May 26, 2017 "Note for School," CHOP certified that Student was hospitalized for a concussion, and advised that Student should be monitored for symptoms, including being tired, distracted, or frustrated.[75] A follow-up letter on June 2, 2017, noted that Student's "[b]ehavior changes continue to occur since early May," and stated that "[n]europsychology testing is not appropriate for a student who is actively being treated for concussion."[76]

The documents from CHOP convey that Student was not demonstrating severe symptoms from the concussions and that the CT scan was negative. Although the May 19 evaluation noted that "[p]er report and chart review" Student's behavior had worsened since the then-recent concussions, the record does not show that any medical professional considered that Student suffered permanent injury from the concussions. The Hearing Officer did not err in concluding that in the absence of the symptoms of a TBI, the fact that Student had suffered concussions did not constitute a reasonable suspicion requiring the District to evaluate for the disability, and there was no Child Find violation by the District.[77]

The Hearing Officer found that even if the concussions had led to a TBI, there were no "signs that a TBI or a concussion adversely affected the Student's academic performance," or

---

[74] A.R. at 917.

[75] A.R. at 920–21.

[76] A.R. at 924.

[77] *See Perrin v. Warrior Run Sch. Dist.*, No. 13-2946, 2015 WL 6746306, at * 14 (M.D. Pa. Sept. 16, 2015) (holding that concussions do not themselves compel a finding of special education), *report and recommendation adopted*, 2015 WL 6746227 (M.D. Pa. Nov. 4, 2015).

any areas of functioning such as cognition, language, or information processing, as required by the regulations.[78] Therefore, the Hearing Officer determined that even if there were reason to look for a TBI, a disability or an injury, such as a concussion, entitles a student to services only if it limits a major life function or adversely affects the child's ability to access education, which was not the case here[79] This conclusion is supported by the record; Student's superior grades continued (although, as Parents note, some assignments were not required to be completed, especially as the end of the school year approached) and the teachers did not report Student having difficulties associated with a TBI.

>      2.     *The ER Properly Set Forth the Basis for the Identification of Autism*

The Hearing Officer determined that the District had conducted a comprehensive review that supported the determination that Student was eligible for services as a person with autism.[80] Parents contend that the record was insufficient to support the IDEA identification of autism in the August 2017 ER.[81] Under the educational definition, autism

> (i) means a developmental disability significantly affecting verbal and nonverbal communication and social interaction, generally evident before age three, that adversely affects a child's educational performance. Other characteristics often associated with autism are engagement in repetitive activities and stereotyped movements, resistance to environmental change or change in daily routines, and unusual responses to sensory experiences.
> . . .
> (iii) A child who manifests the characteristics of autism after age three could be identified as having autism if the criteria in paragraph (c)(1)(i) of this section are satisfied.[82]

---

[78] Special Educ. Hr'g Officer Final Decision and Order at 29 (citing 34 CFR § 300.8(c)).

[79] *See id.* at 29–30.

[80] *Id.* at 25.

[81] Pl.'s Mot. [Ex. A, Doc. No. 10] at 22.

[82] 34 C.F.R. §300.8(c)(1).

Parents contend that the record does not include enough evidence to meet this definition, and that, even if the diagnosis had been correct, there is no evidence that, as a result of autism, Student required special education services. The ER shows that Ms. Maumus evaluated Student on scales used to assess autism (the ASRS) and behavior based on information from teachers and Student's mother, reviewed Student's educational records and medical information (including the evaluation from CHOP discussed above), and conducted a limited classroom observation.

After a full review of the relevant information, the evaluator noted inconsistent results between home and school regarding Student's behaviors, with his mother's ratings seeming to meet the criteria for Autism Spectrum Disorder while the teacher ratings reflected "average" behaviors.[83] The examiner stated that it was unclear "if a more appropriate diagnosis is Social (Pragmatic) Communication Disorder or Autism Spectrum Disorder[;]"[84] determined that Student "does require social skills instruction as well as speech/language therapy in the area of social language;" and concluded that because social (pragmatic) communication disorder "is not one of the IDEA educational disabilities, an eligibility criteria of Autism will be given at this time in order for [Student] to receive support that addresses his current needs."[85]

Ms. Maumus testified before the Hearing Officer that "[i]f a child is exhibiting deficits in social pragmatic language, then autism most probably is an accurate diagnosis for that."[86] Ms. Maumus further testified as to all of the information she considered at the time in making the most appropriate classification.[87] Upon consideration of the record, the Court agrees with the

---

[83] Parents also argue that the District should have interviewed Student's father, whose ratings differed from those of the mother, but have not shown that this was required, as the ER took into account differing ratings.

[84] A.R. at 757.

[85] A.R. at 757.

[86] A.R. at 423.

[87] A.R. at 436.

Decision that the 2017 ER was sufficiently comprehensive to identify all of the child's special education and related service needs.

## V. ATTORNEY'S FEES

A court may award attorney's fees to a "prevailing party" who brought suit under the IDEA.[88] Both parties request an award of counsel fees. Plaintiffs did not prevail and therefore are not entitled to fees,[89] but the Court does not find that Plaintiffs' actions were frivolous, unreasonable, or without foundation. Therefore, the Court declines to award attorney's fees to the District.[90]

## VI. CONCLUSION

Cases under the IDEA are often complex and are of great importance to parents, students, and the district. This is reflected by the thoroughness of the parties' briefing, and the vehemence with which the arguments were pressed. The Court has reviewed the record and concludes that the limited issue of the funding of an IEE based on the 2017 Evaluation is moot, and that in the alternative, there is no basis to disturb the Hearing Officer's decision. An appropriate order will be entered.

---

[88] 20 U.S.C. § 1415(i)(3)(B)(i)(I).

[89] *Jack J. v. Coatesville Ara Sch. Dist.*, No. 17-3793, 2018 WL 3397552, at *16 (E.D. Pa. July 12, 2018) (citing *Hannah L. v. Downingtown Area Sch. Dist.*, No. 12-4595, 2014 WL 3709980, at *8 (E.D. Pa. July 24, 2014)).

[90] 20 U.S.C. § 1415(i)(3)(B)(i)(II)–(III).